UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHANIEL A. S.

                    Plaintiff,

        v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

Case No. 2:24-cv-01564-TLF

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

…

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of defendant's denial of

plaintiff's application for supplemental security income ("SSI") and disability insurance

benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73,

and Local Rule MJR 13, the parties have consented to the jurisdiction of a Magistrate

Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not

disabled. Dkt. 5, Complaint. For the reasons discussed below, the decision of the ALJ is

affirmed.

The alleged date of onset was February 13, 2018. AR 964. In the ALJ's June 6,

2024 decision at issue, ALJ Laura Valente found plaintiff had the following severe

impairments: "autism spectrum disorder; generalized anxiety disorder; depressive

disorder; bipolar disorder; attention-deficit hyperactivity disorder ("ADHD"); and

fibromyalgia. . . ." AR 964. The ALJ determined that plaintiff had the capacity ("RFC") "to

perform medium work . . . except she is limited to frequent postural activities, and

frequently climbing ladders, ropes, and scaffolds. She must avoid concentrated

exposure to extreme cold and to hazards such as dangerous moving machinery and

unprotected heights. She is capable of simple tasks and can interact occasionally with

the general public and with coworkers." AR 966.

At step four, the ALJ found plaintiff could perform past relevant work: "industrial

commercial groundskeeper, and kitchen helper, and an outside deliverer." AR 976. The

ALJ also found at step five plaintiff could perform such occupations as janitor, stores

laborer, or laundry laborer. AR 977.

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

Social Security benefits if the ALJ's findings are based on legal error or not supported

by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654

(9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such

 relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations

omitted). If the evidence would reasonably support affirming the ALJ's decision, or

reversing it, the Court may not substitute its own judgment for the ALJ's. *Ferguson v.*

*O'Malley,* 95 F.4th 1194, 1199 (9th Cir. 2024).

The Court must consider the administrative record as a whole. *Garrison v.*

*Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

evidence that supports and evidence that does not support the ALJ's conclusion. *Id.*

The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did

not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope

1    of the Court's review. *Id.* The Court may determine the ALJ's reasoning by drawing

2    reasonable inferences and determining an implied finding from the record. *Ferguson,* 95

3    F. 4th at 1200.

DISCUSSION

5    **1.  Plaintiff's statements about symptoms and limitations**

6        The ALJ's determinations regarding a claimant's statements about limitations "must

7    be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th

8    Cir. 1998) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).   In

9    assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented

10   objective medical evidence of an underlying impairment. If such evidence is present and

11   there is no evidence of malingering, the ALJ can only reject plaintiff's testimony

12   regarding the severity of his symptoms for specific, clear, and convincing reasons.

13   *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504

14   F.3d 1028, 1036 (9th Cir. 2007)).

15

16       <u>Law of the Case and Rule of Mandate</u>

17       A federal court may provide instructions on remand in Social Security disability

18   review proceedings. *Sullivan v. Hudson*, 490 U.S. 877, 885-886 (1989), *overruled on*

19   *other grounds in Shalala v. Schaefer*, 509 U.S. 292. 300 n.4 (1993).

20       If an ALJ deviates from a court's order of remand, that deviation "is itself legal error,

21   subject to reversal on further judicial review." *Id.*   at 886. If a remand order does not

22   contain restrictive language, or if the scope of the remand is expressly made broad,

23   then neither law of the case nor the rule of mandate would constrict the ALJ in a remand

24

25

3

1  hearing. *See Stacy v. Colvin*, 825 F.3d 563, 566, 568-69 (9th Cir. 2016) (the Court of

2  Appeals found the ALJ did not violate the rule of mandate, holding that the remand

3  order must be read holistically, the District Judge's remand order was expansive, not

4  intended to restrict the ALJ from taking new evidence, and essentially remanded on an

5  open record).

6      "[T]he rule of mandate allows a lower court to decide anything not foreclosed by the

7  mandate." *Hall v. City of Los Angeles,* 697 F.3d 1059, 1067 (9th Cir. 2012). The rule of

8  mandate is a jurisdictional rule, but the law of the case doctrine is discretionary and a

9  judicial invention to promote judicial efficiency. *Id.*

10     Law of the case "generally precludes a court from reconsidering an issue decided

11  previously by the same court or by a higher court in the identical case." *Id*. For the law

12  of the case doctrine to be applied, the Court must consider whether the issue has been

13  explicitly decided, or whether it was by necessary implication decided. *Id.* Law of the

14  case should not be applied if "the evidence on remand is substantially different, when

15  the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*

16  825 F.3d at 567.

17     In this case, Judge David Christel reversed and remanded the ALJ's decision, in

18  part, because the ALJ did not properly evaluate plaintiff's part-time work or plaintiff's

19  statements about symptoms and limitations. AR 1094. Judge Christel also reversed

20  because the ALJ erred in finding plaintiff failed to engage in mental health therapy, in

21  finding plaintiff's affect did not demonstrate that she did not have bipolar disorder or a

22  mood disorder, and because improvement in mental health symptoms did not

23  necessarily mean plaintiff was able to work full-time. *Id*. The law of the case doctrine

24

25

1  and rule of mandate would apply to this portion of Judge Christel's opinion, and the

2  portions of ALJ's decision that deviate from Judge Christel's reasoning and order (AR

3  969-70) are erroneous.

4      An error that is inconsequential to the non-disability determination is harmless. *Stout*

5  *v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If the errors of

6  the ALJ result in a residual functional capacity ("RFC") that does not include relevant

7  work-related limitations, the RFC is deficient and the error is not harmless. *Id.; see also*

8  *Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey*

9  *v. Bowen,* 849 F.2d 418, 422-23 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx.

10 715, 718 (9th Cir. 2021) (unpublished).

11      Here, the ALJ gave other reasons for concluding that plaintiff's statements about

12 symptoms and limitations were not credible. Those other reasons, independent of those

13 Judge Christel rejected are: plaintiff's statements were not entirely consistent with the

14 medical record (AR 968); plaintiff's activities of daily living were inconsistent with her

15 statements about the severity of pain and mental health limitations (AR 970); and

16 plaintiff previously made statements that were inconsistent with her testimony during the

17 second administrative hearing in 2022 (AR 970, 972).

18      "Contradiction with the medical record is a sufficient basis for rejecting the claimant's

19 subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161

20 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an

21 ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of

22 objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v.*

23 *Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th

24

25

1    Cir. 1995) (applying rule to subjective complaints other than pain). Treatment records

2    cannot be cherry-picked; the ALJ must consider a particular record of treatment in light

3    of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.

4        An ALJ may discount a claimant's testimony based on daily activities that either

5    contradict their testimony or that meet the threshold for transferable work skills. *Smartt*

6    *v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

7    2007).

8        In this case, the ALJ reasoned that findings in the medical record were inconsistent

9    with plaintiff's statements about inability to pay attention, difficulty processing the

10   communication of other persons, and inability to perform tasks. AR 968. The Court has

11   reviewed the medical records, and even though some of the findings in the medical

12   record show symptoms such as rapid or tangential speech, poor concentration, and

13   memory (AR 734-735 [Dr. Epp's report dated 5-6-2019], 1320-1322 [notes of Dr. Gary

14   Stobbe, MD, dated 8-16-2022]), there is substantial evidence to support the ALJ's

15   findings. *See e.g.*, AR  856, 860, 862, 865 (notes of LMHCA Swanson, for several

16   appointments in March 2019, plaintiff exhibited oriented and alert cognitive functioning

17   during counseling); AR 901 (progress notes dated 1-31-2020 from Dr. Gary Stobbe,

18   MD, stating that plaintiff's thought form was linear and goal directed, alert and attentive

19   during the visit); AR 924 (Dr. Stobbe's notes dated 8-1-2019 describes plaintiff as

20   having no apparent deficit in memory, and speech is normal rate).

21       With respect to daily activities, the ALJ found plaintiff spent time on the computer

22   reading and enjoying online games with other people, cooking, walking, making

23   breakfast, shopping, maintaining a social life, pursuing karate. AR 970-72. There is

24

25

1    substantial evidence in the record to support the ALJ's reasoning that these activities

2    were inconsistent with plaintiff's statements about not being able to effectively interact

3    with other people, and plaintiff's assertions of being exhausted. *See, e.g.*, AR 370-71,

4    700, 930, 1411-12, 1435-37, 1461-62.

5         Because the ALJ relied on two clear and convincing reasons supported by

6    substantial evidence, the erroneous reasons are harmless. *Stout v. v. Comm'r, Soc.*

7    *Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

8

9         **2.  Medical evidence**

10         Under the 2017 regulations, the Commissioner "will not defer or give any specific

11    evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's]

12    medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless

13    explain with specificity how he or she considered the factors of supportability and

14    consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b),

15    416.920c(a)–(b). In *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), the Court held that

16    under the 2017 regulations,

17         an ALJ cannot reject an examining or treating doctor's opinion as
         unsupported or inconsistent without providing an explanation supported by
18         substantial evidence. The agency must "articulate ... how persuasive" it
         finds "all of the medical opinions" from each doctor or other source, 20
19         C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability
         and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).
20    *Id.*

21         Plaintiff did not identify any harmful error in the ALJ's decision discounting the

22    mental health medical opinions of Dr. Epp, Dr. Greenfield, Dr. Burdge, or Dr. Van

23    Fossen that would be significant as to the ALJ's finding of no disability. If the evidence

24

25

7

1  would reasonably support affirming the ALJ's decision, or reversing it, the Court may not

2  substitute its judgment for the ALJ's. *Ferguson v. O'Malley,* 95 F.4th 1194, 1199 (9th

3  Cir. 2024). There is "a presumption that ALJs are, at some level, capable of

4  independently reviewing and forming conclusions about medical evidence to discharge

5  their statutory duty to determine whether a claimant is disabled and cannot work."

6  *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *see Morgan v. Comm'r of Soc.*

7  *Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to

8  more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

9      The general arguments presented by plaintiff about cherry-picking are insufficient to

10  meet plaintiff's burden of showing harmful error. Dkt. 12 at 8-12.

11  **3. Whether the ALJ erred in determining plaintiff's RFC**

12      Plaintiff argues that the ALJ did not include all impairments in the hypothetical to

13  the vocational expert. Dkt. 12 at 11-13. Plaintiff contends the ALJ should have explained

14  discrepancies between the medical opinions of the consulting doctors, and the

15  limitations described in the RFC – with respect to plaintiff's ability to interact with

16  supervisors. *Id.* at 11. The Court may determine the ALJ's reasoning by drawing

17  reasonable inferences and determining an implied finding from the record. *Ferguson,* 95

18  F. 4th at 1200.

19      The ALJ's hypothetical to the vocational expert included "able to interact . .

20  .occasionally with coworkers and with the general public." AR 1044. This limitation was

21  included in the RFC. AR 966.

22      The ALJ repeatedly made findings that plaintiff's ability to interact with others was

23  not impaired to the degree she alleged, or to the degree that some of the medical

24

25

1    opinions suggested. For example, the ALJ stated that "activities included maintaining

2    social interaction with a group of friends; playing Dungeons and Dragons with a groups

3    of friends; and taking karate lessons during the period at issue" (AR 965); the ALJ also

4    found, "[plaintiff's] above activities are not consistent with the level of functional

5    limitation alleged by claimant . . .due to the allegedly severe anxiety, poor social skills,

6    and poor anger control that make it hard to interact with others and manage daily

7    tasks."; and the ALJ found,  "[plaintiff's] ability to live with a roommate and attend karate

8    suggests an ability to interact appropriately with another person on a daily basis" AR

9    971. Although a roommate is not a supervisor, and a karate instructor is not the boss,

10   these are relationships in which, to be responsive, the plaintiff would have been

11   required to communicate effectively and receive feedback.

12          The ALJ also observed that each of the medical professionals who opined about

13   plaintiff's limitations did not have all the information about plaintiff's activities of daily

14   living and therefore would not know the extent to which plaintiff had social interactions

15   and the ability to maintain an active social life as part of her karate, online games with

16   other players, and having a roommate. AR 973-75.

17

18

19

20

21

22

23

24

25

The Court can draw the inference from the reasoning expressed in the ALJ's decision that the ALJ did explain the discrepancy between the consultative medical opinions and the RFC that did not mention any limitation on frequency of supervisor interactions. *Ferguson*, 95 F. 4th at 1200. The Court upholds the ALJ's decision because their reasoning was supported by substantial evidence and is not contrary to law.

## CONCLUSION

For these reasons, the ALJ's decision is affirmed.

Dated this 24th day of September, 2025.

Theresa L. Fricke
United States Magistrate Judge